IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PHILLIP HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-0586-CV-W-ODS |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

### BACKGROUND

Plaintiff was born on March 5, 1966 and has a high school education. He has prior work experience as an automotive assembler at Ford Motor Company from May 1985 through March 2001. He was discharged once for absenteeism, was rehired and was finally discharged in March 2001 when he brought marijuana to work with him. At the time of the hearing, Plaintiff was living with his mother.

On April 23, 1996, Plaintiff was admitted to the North Kansas City Hospital after his suspicions and increased paranoia scared both his wife and 2 ½ year old daughter. R. at 161. Dr. Steven Segraves reported Plaintiff was hypertalkative, intrusive, loud, difficult to interrupt, and somewhat obese. R. at 162. He showed evidence of persecutory preoccupation, likely with delusions. His attention and concentration were "quite poor," and his insight and judgment were poor. R. at 162. Dr. Segraves diagnosed Plaintiff with probable bipolar I disorder, a single manic episode with psychosis and cannabis abuse. Against medical advice, Plaintiff left the hospital without further treatment. R. at 162.

On April 25, 1996, Plaintiff was admitted to the Baptist Medical Center in Kansas City, Missouri for treatment of psychosis. R. at 164. Plaintiff's affect was irritable and tense, he had moderately increased psychomotor activity and an increased suspiciousness of delusional proportion. Dr. Sherman W. Cole reported it quickly became apparent that he was "quite psychotic, including very, very manic." R. at 164. Plaintiff was discharged on May 4, 1996, with the recommendation to start Baptist Medical Center Day Treatment Program. R. at 165. His discharge diagnosis was bipolar affective disorder, manic, severe, recurrent with psychosis; organic mood disorder; substance abuse (including marijuana, crack, and Ritalin). R. at 166. His global assessment of functioning (GAF) at discharge was 55. R. at 166.

On May 1, 1998, Plaintiff was admitted to the "Step Unit" at Trinity Lutheran North following incarceration at the Liberty County Jail. R. at 167. His symptoms included poor concentration, unfocused thoughts, possible mania and obsessive-compulsive behaviors that included hand washing and blaming others. His thought flow was tangential and he often had "flight of ideas." R. at 167. Dr. Kathryn Stefanowycz's diagnostic impression of Plaintiff was bipolar disorder, mixed and substance abuse, including marijuana, crack, Ritalin, and alcohol. His GAF at admission was 20. R. at 168.

On February 8, 2002, Plaintiff was admitted to Western Missouri Medical Health Center after police were called by a female who reported Plaintiff was peeking into a window of her home. R. at 175. The Police reported he displayed bizarre behavior and refused to calm down. In the emergency room, Plaintiff had increased psychomotor abnormalities, hypervigilance, pressured speech, increased distractibility, and loosening of associations. R. at 175. He admitted to being noncompliant with medication, which included Haldol, Cogentin, Ativan, Klonopin and Lithium. He admitted to using cocaine approximately one week prior to his hospitalization, and also noted a history of methamphetamine and cannabis abuse. R. at 176. He refused to give blood and urine for testing. On the date of his discharge, February 14, 2002, Dr. Kenneth Spaulding, a psychiatrist, indicated Plaintiff's mood was stable, his affect was congruent and his behavior appropriate. Although there was some evidence of mildly disorganized

thought, Plaintiff's thought form was goal-oriented. R. at 177. His discharge diagnosis was bipolar disorder, manic and cocaine abuse. His GAF was 50. R. at 177. Plaintiff's discharge medications included Zyprexa, Tegretol and Klonopin. R. 177-78. In Plaintiff's discharge plan, Dr. Spaulding stated Plaintiff had a long history of noncompliance with treatment and indicated Plaintiff would not be able to function at a higher level unless he complied with treatment. R. at 174. He further stated Plaintiff needed to take his medication as prescribed, keep his doctors' appointments, and stop using cocaine. R. at 174.

On March 1, 2002, Plaintiff presented to North Kansas City Behavioral Health Unit after he reportedly made homicidal threats against his former girlfriend. R. at 188. During the evaluation, he maintained an angry affect and was semi-cooperative. R. at 189. He reported drinking a 12-pack of beer a day, smoking cigarettes occasionally, and smoking crack and marijuana everyday. R. 186, 188. He reported using an eight ball of crack just prior to the assessment. R. at 188. He admitted he was not compliant with his current medication of Zyprexa, Ativan, Tegretol and Klonopin. R. at 184. During the treatment, he refused to participate in group therapy or interact with members of the treatment team. In the presence of a social worker, nurse and discharge planner, Plaintiff stated the only reason for his current admission was to have his disability paper work initiated. R. at 184. He refused to schedule follow-up treatment for his substance abuse and reported using marijuana and crack cocaine everyday. R. at 184. His discharge diagnosis was bipolar mood disorder versus substance induced mood disorder, antisocial personality traits, and a GAF of 45. R. at 184.

On April 1, 2002, Plaintiff was admitted to Baptist-Lutheran Medical Center Chemical Dependency Unit, reporting a use of cocaine and "eightball" one to two times per week. R. at 221. He stated he had also been drinking, and that he often gets violent when drunk, admitting several arrests for assaulting police officers. R. at 221. He stated he wanted to get himself "weaned off the drugs and alcohol." He admitted he had not been taking his Tegretol and Zyprexa. R. at 221. Kenneth Steven Braton, D. O., stated Plaintiff appeared to have fairly good recent and remote memory. R. at 222.

3

On May 7, 2002, Plaintiff was admitted for inpatient treatment at Baptist Medical Center for the usage of alcohol, cocaine and marijuana. R. at 225. He admitted not taking his medication regularly even though he did "quite well" when he does. R. at 227. At the time of discharge, Plaintiff described his mood as "good" and his affect was calm. R. at 225. His assessment was bipolar mood disorder, not otherwise specified, cocaine dependence, noncompliance with medication by history and a GAF of 45-50. R. at 228. His discharge diagnosis was polysubstance dependence and bipolar mood disorder, history of noncompliance with medication and a GAF of 65. R. at 225.

On May 20, 2002, Plaintiff was admitted to Valley Hope Association, presenting a problem of marijuana and cocaine, which he both snorted and smoked. R. at 243. At the time of his intake interview, he seemed polite but seemed fairly basic in his thinking. He reported he was in a detoxification program at Trinity Lutheran, but was transferred to Valley Hope when he got into a disagreement with another patient. R. at 243. Plaintiff admitted that he was fired in March 2001 because, while high on weed, he brought marijuana to work with him. R. at 243. He believed his brain worked pretty well when he took his medication and did not drink. R. at 244. Plaintiff admitted to driving drunk and having blackouts due to drinking. R. at 245. He also stated while he had not smoked marijuana for about three weeks prior to the interview, it was not unusual for him to smoke everyday. He used cocaine every day he could afford it, which was usually three to four times a week. R. at 245. He also admitted his drug use made him "kick into active psychosis." R. at 245. On May 23, 2002, Plaintiff tested positive for cocaine and cannabinoids. R. at 256.

On July 22, 2002, Plaintiff voluntarily entered Baptist-Lutheran Medical Center for acute observation, treatment and stabilization. R. at 260. He admitted drinking a case of beer a day, smoking two joints a day, as well as using crack cocaine. Plaintiff reported significant mood swings, and noted his mood is completely modulated by alcohol and drug use and abuse. R. at 260. He was diagnosed with polysubstance abuse, bipolar mood disorder, type one, mixed, severed, without psychotic features and a GAF of 25. R. at 263.

Plaintiff was again admitted to Valley Hope Association on July 26, 2002.

4

R. at 276. Counselor Theron Platt reported Plaintiff appeared to lack insight and severely lacked motivation for treatment and recovery. R. at 276. He further reported Plaintiff's progress in treatment was "brutally poor" due to his complete lack of participation. Plaintiff slept during most of the sessions and his prognosis for recovery upon discharge was "extremely poor." R. at 276.

On February 10, 2003, Plaintiff was admitted to Overland Park Regional Medical Center requesting detoxification from alcohol and drugs. R. at 295. At the time, he reported drinking 12 to 24 beers a day, using approximately seven grams of cocaine a week, and smoking marijuana on a daily basis. R. at 295. His urine tested positive for cocaine at admission. R. at 295. He was diagnosed with alcohol dependence, cocaine dependence, cannabis dependence, and bipolar disorder. R. at 296. He had a GAF of 40. Plaintiff reported took his bipolar medication inconsistently. R. at 293. During the program, Plaintiff participated only minimally in the program, but agreed to residential treatment through NorthStar. R. at 294.

One month later, Plaintiff was again admitted to the Overland Park Regional Medical Center. R. at 331. Christopher Vanhorn, D. O., who also treated Plaintiff during his previous stay, noted that Plaintiff was discharged to continue chemical dependency treatment on an outpatient basis, but chose to resume use of alcohol and crack cocaine. R. at 331. He further noted Plaintiff was still not compliant with his medications. R. at 331. Plaintiff's affect was irritable and his attention span was quite limited. R. at 331. His insight and judgment was very poor. R. at 332. His diagnosis impression included alcohol dependence, polysubstance dependence, alcohol and polysubstance withdrawal, and mood disorder. He had a GAF of 40.
R. at 332.

On February 17, 2004, Plaintiff was admitted to Two Rivers Psychiatric Hospital with complaints of bipolar mood disorder and polysubstance abuse. R. at 397. Plaintiff admitted drinking six to twelve beers a day, smoking marijuana and using crack cocaine and opioids. R. at 397. Dr. Richard Musicant's diagnostic impressions included bipolar mood disorder, polysubstance abuse obesity. R. at 398. Upon discharge, Michael Young, M. D., referred Plaintiff to Valley Hope for long term substance treatment. R. at

5

393. Dr. Young noted Plaintiff did not attend many programs while at Two Rivers. R. at 393. His discharge diagnosis was bipolar mood disorder, polysubstance dependence, noncompliance with medication and GAF of 40. R. at 393.

On July 13, 2004, Plaintiff's treating physician Dr. Samuel Fadare completed a medical impairment questionnaire where he assessed Plaintiff's abilities independent of any impairment from alcoholism and drug addiction. R. at 413. He stated Plaintiff was incapable of work due to a diagnosis of bipolar disorder with psychotic features. R. at 413. He opined Plaintiff would miss more than three days of work each month due to his illness. R. at 415.

An administrative hearing was held on October 7, 2004. Dr. Stanley W. Golon, a psychiatrist, testified drugs and alcohol were a significant part of each hospitalization of Plaintiff and each stay showed marked improvement within three to five days. R. at 26. Dr. Golon opined that Plaintiff suffers from bipolar affective disorder as listed under 12.04, and severe substance abuse that is considered under listing 12.09. However, he felt that factoring out Plaintiff's substance abuse, he does not meet or equal the listings. He opined Plaintiff has some mild to moderate limitations and is capable of performing simple unskilled work. R. at 29.

At the hearing, Plaintiff testified he was put on medical leave March 27, 2001. R. at 34. He also testified he had not been smoking marijuana for about five years and had not used cocaine for about five months. R. at 44.

Vocational Expert Amy Salva ("VE") testified Plaintiff's work history included working as an automotive assembler, which indicates a medium, unskilled work level. R. at 47. The VE was asked to assume an individual with Plaintiff's age, education and work experience with a physical capacity to lift and carry objects up to 50 pounds occasionally and ten pounds frequently, and could stand and walk without particular limitations. The VE testified such individual could return to his past job of auto assembly work. R. at 51. In response to follow-up questioning, the VE testified an individual with an underlying bipolar condition treated by medication and therefore mildly impaired concentration, persistence and pace would also be able to return to his previously-held position. R. at 52. However, if the individual was moderately impaired,

meaning one-third of the day he is having difficulty maintaining his concentration and getting his work done, he would not be able to maintain any employment. R. at 52. Further, such individual with problems of obesity who would be restricted to carrying objects of 20 pounds occasionally and five to ten pounds frequently would be precluded from his past work. That individual could work in a light level unskilled position in assembly, packaging, laundry work or cleaning. R. at 52.

The ALJ found absent the effects of substance abuse, Plaintiff's impairments are not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, regulations No. 4. The ALJ found Plaintiff to have an affective disorder and substance abuse disorder. R. at 18. The ALJ also found Plaintiff's allegations of disability not credible, as his underlying mental and emotional impairments are treatable and his symptoms can be under optimum control with abstinence from substance abuse and compliance with prescribed treatments. R. at 19. The ALJ found Plaintiff had a good work history, with steady, consistent work and earnings as an automotive assembler and that Plaintiff lost his job because of absenteeism and drug possession on the job, not his underlying mental and emotional impairments. R. at 19. The ALJ did not give much weight to Plaintiff's treating physician, Dr. Fadare because it was inconsistent with the underlying evidence that Plaintiff is disabled due to substance abuse and non-compliance with prescribed medication. R. at 20. The ALJ concluded Plaintiff could perform his past relevant work as an automotive assembler. R. at 20.

## DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v.

7

Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Treating Physician

Plaintiff argues the ALJ erred in not giving controlling weight to the opinion of Plaintiff's treating physician, Dr. Fadare.  A treating physician's opinion is due "controlling weight" if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).  The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id.  The ALJ reviewed the record of Dr. Fadare's treatment of Plaintiff, along with the records of Plaintiff's several visits to hospitals and inpatient treatment facilities.  The ALJ did not give much weight to Dr. Fadare's July 2004 report which stated Plaintiff is disabled due to bipolar disorder because it is inconsistent with the underlying evidence which indicated Plaintiff is disabled due to a substance abuse problem.  R. at 413.

According to Dr. Fadare's own notes, Plaintiff was not taking his medication and needed to comply with his medication in order to improve. R. at 394. Dr. Spaulding stated Plaintiff had a long history of noncompliance with treatment and indicated Plaintiff would not be able to function at a higher level unless he complied with treatment. R. at 174. He further stated Plaintiff needed to take his medication as prescribed, keep his doctors' appointments, and stop using cocaine. R. at 174. The ALJ's finding is also supported by Dr. Golon's testimony that drugs and alcohol were a significant part of each hospitalization of Plaintiff and each hospitalization showed marked improvement within three to five days. R. at 26.  When not considering Plaintiff's drug abuse, Dr. Golon opined Plaintiff had some mild to moderate limitations and was capable of performing simple, unskilled tasks R. at 29. Therefore, the ALJ gave proper weight to Dr. Fadare's opinion.

Substantial Evidence

Plaintiff also claims the ALJ decision is not supported by substantial evidence because contrary evidence was not weighed. Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. Id. The ALJ reviewed all of the record when reaching his decision. R. at 16. Plaintiff argues ALJ erred despite Dr. Golon opining Dr. Fadare's opinion should be given "some weight." R. at 33. As discussed above, the ALJ did consider Dr. Fadare's opinion and it was not supported by the substantial weight of the evidence. The ALJ properly considered the evidence in reaching his decision.

<u>Substance Abuse</u>

Plaintiff argues the ALJ erred by finding that Plaintiff's drug and alcohol dependency was a contributing factor material to the determination of disability. An individual is not considered to be disabled if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled. Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Under 20 C.F.R. § 404.1535, the relevant inquiry is "whether [the Commissioner] would still find you disabled if you stopped using drugs or alcohol." Id. At 725. Plaintiff carries the burden of proving his substance abuse is not a contributing factor material to the claimed disability. Id. The record establishes Plaintiff has a long history of drug and alcohol abuse. Plaintiff admitted his drug use made him "kick into active psychosis." R. at 245. The ALJ, upon reviewing all of the evidence, found the combination of Plaintiff's substance abuse and affective disorder is of such severity to meet the criteria within the meaning of the Social Security Act. R. at 18. However, the effects of substance abuse are material to Plaintiff's disability, and Plaintiff is not under a disability as defined in the Act absent the effects of substance abuse. R. at 21. Therefore, the ALJ properly concluded substance abuse was a material contributing factor to Plaintiff's disability.

9

## CONCLUSION

For these reasons, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

                                              /s/ Ortrie D. Smith
                                              ORTRIE D. SMITH, JUDGE
DATE: February 28, 2006                  UNITED STATES DISTRICT COURT